IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH LAUDADIO, in the capacity as | : | CIVIL ACTION |
| guardian of MATTHEW LAUDADIO, | : | |
| | : | |
| v. | : | |
| | : | |
| SOUTHEASTERN PENNSYLVANIA | : | |
| YOUTH LACROSSE ASSOCIATION and | : | NO. 08-1525 |
| WISSAHICKON LACROSSE CLUB | : | |

O'NEILL, J.                                                                                    APRIL 23, 2008

## MEMORANDUM

On March 31, 2008, defendants Southeastern Pennsylvania Youth Lacrosse Association ("SEPYLA") and Wissahickon Lacrosse Club removed both a complaint and a petition for a preliminary injunction filed on March 24, 2008 by plaintiff Joseph Laudadio, in his capacity as guardian of Matthew Laudadio, in the Court of Common Pleas for Philadelphia County.  In the complaint, plaintiff alleges that defendants violated Matthew's rights under the Equal Protection clauses of both the Pennsylvania Constitution and the Constitution of the United States of America, and now seeks relief pursuant to 42 U.S.C. § 1983.  Before me now are defendants' motion to dismiss, plaintiff's response and defendants' reply thereto.

## BACKGROUND

For the past four years, plaintiff's twelve-year-old son, Matthew, has played youth lacrosse for defendant Wissahickon Club.  Defendant Wissahickon Club is a member of defendant SEPYLA, an umbrella association responsible for promulgating rules and regulations governing member clubs.

1

Due to a strained relationship with the head coach of defendant Wissahickon Club, Matthew Laudadio wanted to play for a different SEPYLA club.  However, defendant SEPYLA's rules required Matthew to obtain a waiver from defendant Wissahickon Club in order to do so.  Defendant Wissahickon Club denied Matthew's request for such a waiver.

Plaintiff alleges that other local players have been permitted to join non-local clubs in the absence of express permission from their local club.  Plaintiff further alleges that clubs belonging to defendant SEPYLA play their lacrosse games on public fields.  Thus, plaintiff claims he is entitled to relief for the violations he has alleged.

STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In ruling on a 12(b)(6) motion, I must accept as true all well-pleaded allegations of fact, and any reasonable inferences that may be drawn therefrom, in plaintiff's complaint and must determine whether "under any reasonable reading of the pleadings, the plaintiff[] may be entitled to relief." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (citations omitted).  Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiffs' obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted).  A well-pleaded

2

complaint may proceed even if it appears "that recovery is very remote and unlikely." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering a Rule 12(b)(6) motion, I do not "inquire whether the plaintiff[] will ultimately prevail, only whether [he is] entitled to offer evidence to support [his] claims." Nami, 82 F.3d at 65, citing Scheuer, 416 U.S. at 236.

DISCUSSION

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. However, this Amendment governs only state action and not that of private parties. Rendell-Baker v. Kohn, 457 U.S. 830, 837-8 (1982). Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights[1] "under color of any statute, ordinance, regulation, custom, or usage" of a state. 42 U.S.C. § 1983. Although a private party may cause such a deprivation, that private party "may be subjected to liability under § 1983 only when [it] does so under the color of law." Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 156 (1978). For cases under Section 1983, the Supreme Court has consistently treated "under color of law" the same as "the 'state action' required under the Fourteenth Amendment." Lugar v. Edmondson Oil Co., 457 U.S. 922, 928 (1982) (internal citations omitted). Thus, to state a claim under Section 1983, plaintiff must allege a deprivation of a "federal constitutional or statutory right by a state actor." Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005).

In the present motion, defendants argue that: (1) plaintiff cannot demonstrate action by a

---

[1]Although plaintiff asserts violations of the Equal Protection clause of the Pennsylvania Constitution, relief under Section 1983 is available only for deprivations of federal constitutional or statutory rights. See 42 U.S.C. § 1983.

state actor, and (2) plaintiff cannot establish a deprivation of a federal constitutional or statutory right. I find that there was neither state action nor a deprivation of a federal constitutional right and will grant defendants' motion to dismiss.

I.      State Action

Under the state action principle, "constitutional standards are invoked only when it can be said that the [State] is *responsible* for the specific conduct of which the plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982) (emphasis in original). In fact, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (internal citations omitted). The state action inquiry is fact-intensive, and guided by a number of approaches outlined by the Supreme Court. Crissman v. Dover Downs Entertainment, 289 F.3d 231, 239 (3d Cir. 2002).

Here, plaintiff chooses to rely solely on the "symbiotic relationship" approach first delineated in Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961). However, the Court of Appeals has clearly stated that "while Burton remains good law, it was crafted for the unique set of facts presented and we will not expand its reach beyond facts that replicate what was before the Court in Burton." Crissman, 289 F.3d at 242.[2] Most recently, the Court of Appeals has

---

[2]In Boyle v. Governor's Veterans Outreach Assistance Ctr., the Court of Appeals held that Burton depended on the fact that "the state had many obligations and responsibilities regarding the operation of the restaurant; mutual benefits were conferred; and the restaurant operated physically and financially as an integral part of a public building devoted to a public parking service." 925 F.2d 71, 76 (3d Cir. 1991) (internal citations omitted). Later, the Court of

declined to find state action under <u>Burton</u> when "no tangible benefit flowed to" the state from the defendants.  <u>Leshko</u>, 423 F.3d at 341 (finding no state action even though the foster parent defendants "served the state and received government funds; so there may have been some mutual benefit").

 Plaintiff contends that because SEPYLA clubs played on public fields and may have received other public benefits, a finding of state action is warranted under <u>Burton</u>'s "symbiotic relationship" test.  However, I find no similarities between the facts of this case and those of <u>Burton</u>.  Defendants' gratuitous use of public fields is very different from the situation in <u>Burton</u>, where the rent paid by a private entity was essential to the financial viability of a government enterprise.  365 U.S. at 724.  Moreover, plaintiff does not claim that any tangible benefit flowed to the state from defendants.  <u>See</u> <u>Leshko</u>, 423 F.3d at 341.  Hence, in accordance with the Court of Appeals precedent, I will decline to extend <u>Burton</u> beyond the set of facts unique to that case.

 In addition to plaintiff's mistaken reliance on <u>Burton</u>, plaintiff also contends that defendants' use of public fields is analogous to the receipt of public funds.  Yet it is clearly established that a state "may subsidize private entities without assuming constitutional responsibility for their actions."  <u>San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.</u>, 483 U.S. 522, 544 (1987).  Moreover, the Supreme Court has declined to find state action even when virtually all of an operation's income is from government funding.  <u>See</u> <u>Blum</u>,

---

Appeals took an even narrower view, holding that <u>Burton</u> "turned on" not only the facts listed in <u>Boyle</u> but also that "the profits from the discriminatory conduct were 'indispensable' to the finances of a government agency."  <u>Crissman</u>, 289 F.3d at 245-6 (quoting <u>Black v. Indiana Area Sch. Dist.</u>, 985 F.2d 707, 711 (3d Cir. 1993)).

457 U.S. at 1011; <u>Rendell-Baker</u>, 457 U.S. at 840.  Therefore, I find defendants' use of public fields insufficient to demonstrate state action.

Plaintiff contends that defendants have received additional public resources, and asks for expedited discovery on this issue.  I will deny this request because even defendants' receipt of additional public resources will not enable plaintiff to establish state action.  Finding an ostensibly private association to be a state actor requires a "pervasive entwinement of public institutions and public officials in its composition and workings." <u>Brentwood Acad.</u>, 531 U.S. at 298.  Plaintiff must show that defendants are "so integrally related to the state that it is fair to impute to the state responsibility for the action." <u>Leshko</u>, 423 F.3d at 340.  Plaintiff admits that the principal public resource used by defendants is public land, describing it as the lifeblood of the SEPYLA organization.  Yet, I found defendants' use of public land insufficient to constitute state action.  Defendants' receipt of additional public resources, lesser in both importance and quantum, does not change my analysis.

To find state action, I require more than just private entities benefitting from public resources.  Hence, plaintiff including an allegation "on information and belief" that defendants received additional public resources will not save the complaint from failing to allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element."  <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).  As plaintiff cannot seek discovery in the mere hope of proving his claim, I will deny the request for expedited discovery.

II.     Deprivation of a Federal Constitutional Right

Even if plaintiff could establish state action I would still grant defendants' motion to dismiss because plaintiff cannot demonstrate a violation of equal protection.  Plaintiff raises a "class of one" equal protection claim.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  To state a claim under that theory, plaintiff must allege that "he was intentionally treated differently from others similarly situated by the defendant and that there was no rational basis for such treatment."  Phillips, 515 F.3d at 243.

Here, plaintiff alleges in Count I that since defendant SEPYLA has allowed certain players to play for non-local clubs without a waiver or without requesting such a waiver to prevent Matthew from doing the same under similar circumstances is arbitrary, capricious and without a rational basis.  In Count II, Plaintiff claims that defendant Wissahickon Club has allowed local players to play for non-local clubs, making its refusal to offer and/or to request such a waiver for Matthew also arbitrary, capricious and without a rational basis.

As an initial matter, in Count II plaintiff has failed to sufficiently allege that he was treated differently from others similarly situated.  Although plaintiff alleges that defendant Wissahickon Club has allowed certain players to play for non-local clubs plaintiff does not allege that Matthew is similarly situated to those same players.  Id. at 244.  Hence, I find that Count II fails to state a claim for violation of equal protection.

Furthermore, plaintiff's claim cannot pass the rational-basis threshold.  Plaintiff concedes that Matthew is not a member of any protected or suspect class.  Therefore, I must apply a highly deferential, rational-basis standard of review.  Under rational-basis review, "the challenged classification must be upheld if there is any reasonably conceivable state of facts that could

7

provide a rational basis for the classification." <u>Angstadt v. Midd-West Sch. Dist.</u>, 377 F.3d 338, 345 (3d Cir. 2004) (internal quotations omitted).  Defendants assert that the waiver rule encourages the development of new youth lacrosse programs without jeopardizing existing programs by discouraging "team shopping."  As defendants have put forth a rational basis for the rule as well as its application to Matthew, the complaint cannot defeat rational-basis review.

       Hence, plaintiff can establish neither state action nor an equal protection violation and I find that granting leave to amend would be futile.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).

       An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOSEPH LAUDADIO, in the capacity as     :          CIVIL ACTION
guardian of MATTHEW LAUDADIO,     :
                                      :
          v.                        :
                                      :
SOUTHEASTERN PENNSYLVANIA      :
YOUTH LACROSSE ASSOCIATION and   :          NO. 08-1525
WISSAHICKON LACROSSE CLUB       :

## ORDER

AND NOW, this 23rd day of April 2008, upon consideration of defendant's motion to dismiss, plaintiff's response, and defendant's reply thereto, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendant's motion is GRANTED and plaintiff's complaint is DISMISSED.

The CLERK OF COURT is DIRECTED to close this case statistically.

*/s/ Thomas N. O'Neill, Jr.*
_____
THOMAS N. O'NEILL, JR., J.